### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOE PETE WELLS, and** : | Civil No. 3:13-CV-2575 |
| **LES KRUTOFF,** : | |
| : | **(Magistrate Judge Carlson)** |
| **Plaintiffs** : | |
| : | |
| v. : | |
| : | |
| **JPC EQUESTRIAN, INC., and** : | |
| **VARUN SHARMA** : | |
| : | |
| **Defendants** : | |

### **MEMORANDUM**

**I.   INTRODUCTION**

In this action, Joe Pete Wells and Les Krustoff have brought claims against JPC Equestrian, Inc. and its Chief Executive Officer, Varun Sharma, alleging breach of contract and tortious interference with contract. The plaintiffs allege that they had contracts with JPC to market and sell equine-related products for the company in respective four-state sales territories. The plaintiffs claim that JPC breached the terms of their sales representation agreements in a variety of ways, and that Sharma directly interfered with the plaintiffs' contracts by engaging in his own sales of goods to retail customers in the plaintiffs' sales territories without paying the plaintiffs' commissions.[1]

---

[1] The plaintiffs had also brought claims for age and gender discrimination, but the plaintiffs have since conceded that these claims should be dismissed

The defendants have moved to dismiss the complaint, arguing that the plaintiffs have failed to plead sufficient facts to support their claims, or that the plaintiffs' allegations conclusively demonstrate that they are not entitled to relief. The motion is fully briefed and is ripe for disposition. Because we find that the plaintiffs have adequately stated their claims for relief, and because we do not agree with the defendants' that these claims can be disposed of on the basis of the allegations in the complaint, the motion to dismiss will be denied with the exception to the plaintiffs' claim for age discrimination, which they have conceded should be dismissed.

## II. STATEMENT OF FACTS[2]

Plaintiff Joe Pete Wells is a resident of Virginia, and Plaintiff Les Krutoff is a resident of New Jersey. Both of the plaintiffs are experienced sales representatives in the equine and horse tack line of business. (Compl., ¶¶ 1, 2, 9.) JPC is a corporation organized and existing under the laws of the Commonwealth of

---

because the plaintiffs failed to exhaust administrative remedies prior to bringing this suit. (Doc. 10, at p. 8.) Accordingly, the only claims presented in this case are for breach of contract and for tortious interference with contractual relations. The plaintiffs' claims alleging age discrimination set forth in Count II will be dismissed.

[2] The factual background to this memorandum is taken from the well-pleaded allegations set forth in the plaintiffs' complaint, which are accepted as true for purposes of ruling on the defendants' motion to dismiss. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Pennsylvania, with its principal office and primary place of business located in Drums, Pennsylvania. (Id., ¶ 3.) Varum Sharma is a resident of Florida and is JPC's Chief Executive Officer. (Id., ¶¶ 4, 15.) In addition to acting as CEO, Sharma also acts as an independent wholesaler of merchandise to certain accounts in the United States, apparently acting outside of his role as the head of JPC. (Id., ¶ 15.)

On or about May, 2002, Wells and JPC entered into a sales representation agreement that provided that Wells was to act as the marketing representative for the various equine-related products JPC sold in the defined territory of Maryland, Virginia, North Carolina, and South Carolina. (Id., ¶ 10.) Under the terms of a separate sales agreement, Krutoff was to act as a marketing representative in the defined territory of Pennsylvania, New York, New Jersey, and Delaware. (Id.) The plaintiffs have attached a copy of Wells's alleged sales representation agreement to the complaint signed only by JPC, but have not attached a copy of the alleged agreement between JPC and Krutoff, and have not attached fully executed copies of either agreement. The plaintiffs allege that the terms of their sales agreements with JPC are substantially the same, and provided that the plaintiffs were engaged as independent contractors rather than as employees, and that the plaintiffs were to receive a 10% commission on all net payable invoices for the goods they sold in their respective sales territories. (Id., ¶¶ 11-12.) According to the plaintiffs, they

performed ably under the terms of their agreements, the greatly expanded JPC's sales in the assigned territories, and they met JPC's reasonable expectations. (Id., ¶ 13.)

The plaintiffs claim that at some point, JPC began breaching the terms of the sales agreements by, among other things:

- declaring certain accounts to be "house accounts" for which no sales commissions would be paid to Wells or Krutoff;

- unilaterally reducing the plaintiffs' commissions on certain accounts to 5% rather than 10% as provided by the agreements;

- selling goods within the plaintiffs' sales territories without paying commissions; and

- charging the plaintiffs for their sales samples, rather than providing them at no charge as JPC was contractually obligated to do.
-

(Id., ¶ 14.) In addition, the plaintiffs claim that Sharma from time to time would bypass JPC entirely, and sell goods of the same type as those JPC sold to retail customers, within the plaintiffs' sales territories, and including to customers that Wells and Krutoff had developed for JPC, without paying any commissions to Wells or Krutoff. (Id., ¶ 16.)

In April 2010, Sharma, acting on behalf of JPC, informed Krutoff that the company had "decided to go in a different direction," and thereafter on April 9, 2010, JPC terminated the Krutoff's sales agreement. At this time, Krutoff was 65 years old with 35 years of experience in the industry; JPC elected to replace him with a 21 year

old woman with no experience. Similarly, on May 5, 2010, Sharma, acting on behalf of JPC, terminated Wells's sales agreement. At that time, Wells was 64 years old, with more than 30 years of experience. He was replaced by a 29 year-old woman. Sharma allegedly told another contractor that the company had "decided to go with young girls" as sales representatives before terminating that contractor's agreement with JPC. (Id., ¶ 18.)

The plaintiffs filed their complaint on October 15, 2013. (Doc. 1.) On December 13, 2013, the defendants moved to dismiss, and filed a brief in support of the motion on December 26, 2013. (Docs. 5, 7.) The plaintiffs filed a brief in opposition to the motion on January 9, 2014. (Doc. 10.) The parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned on January 13, 2014. (Doc. 13.) The defendants declined to file a reply brief in further support of their motion, which is now ripe.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the

plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face, "Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conely v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough facts[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id at 556. Furthermore, courts must determine whether, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief," Eid v. Thompson, 740 F.3d 118 (3d Cir. 2014), which requires the plaintiff to plead "more than labels and conclusions or a formulaic recitation of the elements of a cause of action." W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165 (3d Cir. 2013) (quotation marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court "consider[s]... the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents," Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013). The court may also consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Moreover, "documents whose contents are alleged in the

complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. Id. However, the court may not make reference to other parts of the record in determining a motion to dismiss. Angstadt v. Midd-W. Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004).

### IV.   DISCUSSION

#### A.   The Complaint States a Claim for Breach of Contract

The defendants first move to dismiss the plaintiffs' claims for breach of contract by arguing that the plaintiffs have alleged that the defendants breached a written sales agreement, but the agreement that the plaintiffs attached to the complaint "shows, on its face, that a written agreement was never reached." (Doc. 7, at p. 3.) The defendants also note that Krutoff failed to attach a copy of his alleged sales agreement, which they contends "undermine[s] his claim that the parties' longstanding course of conduct should be overridden by a purported sales representation agreement." (Id., at p. 5.)  Notably, however, the defendants' assertions regarding a "longstanding course of conduct" would appear to invite the Court to consider matters outside of the complaint, and to consider the defendants' assertions about the true nature of the parties' commercial relationship from the defendants' perspective. This we cannot do on a motion to dismiss, which simply tests the legally sufficiency of the complaint itself.

Under Pennsylvania law, a plaintiff asserting a breach of contract must establish three elements: (1) the existence of a contract; (2) a breach of a duty imposed by that contract; and (3) resultant damages. Pennsy Supply Co. v. American Ash Recycling Corp., 895 A.2d 595, 600 (Pa. Super. Ct. 2006). "Generally, mutual assent by the parties with the capacity to contract signals contract creation. Under Pennsylvania law, the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." McGoldrick v. TruePosition, Inc., 623 F. Supp. 2d 619, 627 (E.D. Pa. 2009) (citing Channel Home Centers, Div. of Grace Retail Corp. v. Grossman, 795 F.2d 291, 298-99 (3d Cir. 1986)). Under Pennsylvania law, when a court examines whether a contractual agreement exists, the court will consider "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." Id. (quoting Channel Home Centers, 795 F.2d at 299) (internal quotation marks omitted).

The defendants argue that the Court should dismiss the plaintiff's contract claims because the one sales agreement that was attached to the complaint was not signed by both parties. The defendants maintain that the Court should assume, therefore, that no fully executed copy of the agreement exists, or that the plaintiffs are

unable otherwise to prove the existence of a contractual relationship that JPC breached with respect to the plaintiffs. The defendants thus suggest that the plaintiffs have an obligation in the complaint itself to prove and establish mutual assent by both parties, and because the plaintiffs have attached only one sales agreement that does not appear to be fully executed, the plaintiffs should be absolutely foreclosed from pursuing breach-of-contract claims based on terms that the plaintiffs claim were reflected in the attached sales agreement. We are unable to make this legal conclusion at this early stage in the proceedings, however, and we are likewise unable to consider the defendants' assertions that the attached agreement merely reflected "preliminary negotiations that were never acted upon or enforced by either party." (Doc. 7, at p. 7.)

     The plaintiffs have claimed that they had sales agreements with JPC, and that these agreements were entered into sometime in 2002. The plaintiffs allege that they performed their contractual duties in accordance with the contracts until sometime in 2010 when the agreements were terminated. The plaintiffs have also alleged that JPC breached specific terms and conditions of the agreements, and that the plaintiffs suffered damages as a result. The plaintiffs also argue that discovery in this case will substantiate their claims regarding the existence of legally enforceable contracts, and the defendants' breach of those contracts. Given that our inquiry at this stage of the

litigation is confined to the allegations in the complaint, and because further consideration of the terms of the contracts and the nature of the parties' commercial relationships will necessarily depend on evidence not before the Court at this time, the defendants' motion to dismiss the plaintiffs' claims for breach of contract must be denied. If the defendants are able to prove that there is no evidence to support the plaintiffs' claims that the defendants' breached sales agreements that the parties allegedly adhered to for many years, the defendants will be permitted to file a properly documented motion for summary judgment in due course. However, it is premature to seek this relief through a motion to dismiss.

### B. The Complaint Adequately Pleads Tortious Interference

The defendants also move to dismiss the plaintiffs' claims against Varun Sharma for tortious interference with contract. In order to state a claim for tortious interference with contractual relations under Pennsylvania law, a plaintiff must allege:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

CGB Occupational Therapy, Inc. v. RHA Health Services Inc., 357 F.3d 375, 384 (3d Cir. 2004) (quoting Crivelli v. General Motors Corp., 215 F.3d 386, 394 (3d Cir.

2000)); see also Pawlowski v. Smorto, 588 A.2d 36, 39-40 (Pa. Super. Ct. 1991).

In this case, the plaintiffs have alleged that Sharma intentionally interfered with the plaintiffs' contractual relationship with JPC by bypassing JPC entirely and selling goods of the same type sold by JPC directly to retail customers within Wells's and Krutoff's sales territories. Moreover, the plaintiffs allege that Sharma sold goods to customers that the plaintiffs had developed for JPC, without paying any commission to the plaintiffs. (Compl., ¶ 16.) The plaintiffs also maintain that Sharma interfered with their contract with JPC by arranging sales of merchandise directly to retailers in the United States, within the plaintiffs' sales territories, and thus denied JPC the opportunity to import the products and, concomitantly, denied the plaintiffs the opportunity to earn a commission on the sales of these goods to customers that the plaintiffs had developed for JPC. (Id., ¶¶ 41-42.)

The defendants argue that the plaintiffs' tortious interference claims should be dismissed because the written agreement attached to the complaint – an agreement the defendants maintain is actually not a contract in the first instance – does not provide the plaintiffs with "a contractual right to certain sales with third-party retailers – their relationship with JPC Equestrian only permitted them to market JPC's products to third-party retailers within their territories." (Doc. 7, at p. 14.) Thus, the defendants suggest that the sales agreements permitted Sharma, JPC's Chief Executive Officer,

to bypass JPC and to make sales in his own behalf to customers that the plaintiffs allegedly developed for JPC.

The defendants also argue that "neither JPC Equestrian nor Plaintiffs could have satisfied the 'specialized' sales to the retailers at issue because JPC Equestrian is only a re-seller and not a manufacturer capable of fulfilling the specialty orders at issue." (Id.)  But here, again, the defendants invite the Court to consider matters far removed from the pleadings, and to make ultimate judgments about whether the plaintiffs will be able to prove their claims with the aid of evidence developed during discovery.  The scope of the plaintiffs' contractual rights, and whether Sharma interfered with the plaintiffs' sales agreements with JPC, cannot be resolved at this time.  To the extent the defendants believe after discovery that the plaintiffs have no evidence in support of these claims, they may seek dispositive relief through a motion for summary judgment.  The motion to dismiss the plaintiffs' tortious interference claims will be denied.

An appropriate order consistent with this memorandum will be entered.

        /S/ Martin C. Carlson
        Martin C. Carlson

        United States Magistrate Judge

DATED: March 24, 2014